ALK:AMR
F. #2023R00487

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against –                                                                   Docket No. 97–CR-776 (ERK)

TONY CLANTON,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S PETITION FOR A WRIT OF ERROR CORAM NOBIS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Andrew M. Roddin
Assistant U.S. Attorney
    (Of Counsel)

Date of service: July 22, 2024

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................2

I. FACTUAL AND PROCEDURAL BACKGROUND..........................................................3

   A. Offense Conduct and Indictment...................................................................................3

   B. Guilty Plea and Sentencing............................................................................................4

   C. The Defendant's Habeas Petition ..................................................................................6

   D. The Defendant's Release and Subsequent Criminal Conduct.......................................7

II. APPLICABLE LAW ..........................................................................................................9

III. ARGUMENT ....................................................................................................................11

   A. The Defendant Has Not Provided "Sound Reasons" for Failing to Bring His Coram Nobis Claims Earlier............................................................................................................11

   B. Justice Requires that the Defendant's Petition for Coram Nobis Be Denied ..................13

CONCLUSION............................................................................................................................18

## PRELIMINARY STATEMENT

The government submits this memorandum of law in opposition to defendant Tony Clanton's June 10, 2024 petition for a writ of error coram nobis. ECF Dkt. No. 126 (the "Petition"). The defendant argues that his conviction for violating Title 18, United States Code, Section 924(c)—which stemmed from a robbery during which he repeatedly attempted to murder members of law enforcement using a gun—should be vacated because the undercover officer he robbed was not engaged in interstate commerce, and that he therefore committed only an attempted Hobbs Act robbery and not a "crime of violence" as required by § 924(c).

The Petition should be denied. First, the defendant has provided no explanation for failing to seek relief until 26 years after he was sentenced, five years after the Supreme Court's decision in United States v. Davis, 588 U.S. 445 (2019), and two years after its decision in United States v. Taylor, 596 U.S. 845 (2022). This delay significantly and inexplicably exceeds periods that courts have previously found to render a coram nobis petition untimely. Second, there is no error requiring correction via a writ of coram nobis, which is an "extraordinary" remedy that is only issued to redress "fundamental error." United States v. Denedo, 556 U.S. 904, 911 (2009). In fact, in denying the defendant's 1999 habeas petition, this Court and the Second Circuit previously rejected the very same interstate commerce argument he is making now. Because the defendant pleaded guilty to a completed Hobbs Act robbery—and not an attempt as he now urges—there was no error, his § 924(c) conviction is valid, and the Petition should be denied.[1]

---

[1] The defendant has also waived his right to bring a coram nobis challenge. The Second Circuit "has recognized waiver where a party actively solicits or agrees to a course of action that he later claims was error," "where a party asserts, but subsequently withdraws, an objection in the district court," and "where a party makes a tactical decision not to raise an objection." United States v. Spruill, 808 F.3d 585, 597 (2d Cir. 2015) (collecting cases) (internal quotation marks and citations omitted). The defendant "actively solicited" the plea he now identifies as error "in order

2

I.  FACTUAL AND PROCEDURAL BACKGROUND

    A.  Offense Conduct and Indictment

On July 25, 1997, the defendant sold a .357 Magnum revolver to an undercover officer (the "UC") for five hundred dollars in cash. Exhibit 1 (Presentence Investigation Report) ("PSR") ¶ 5.[2] Four days later, on July 29, 1997, the defendant met again with the UC and agreed to sell the UC three Glock nine-millimeter firearms for $2,100. Id. He also gave the UC a sample of cocaine and heroin. Id.

Later that day, the defendant entered the UC's car and asked to see the money for the three Glock nine-millimeter firearms. Id. When the UC showed the money, the defendant pointed a loaded gun at the UC, took the money, and told the UC that if the UC moved, the defendant would "blow his head off." Id.; Clanton v. United States, No. 00-2190 (2d Cir.), Brief for United States, 2001 WL 34106986, at *3 ("Govt. Habeas Br."). The defendant stole the money and a bracelet from the UC. Id.; PSR ¶ 6. When agents monitoring the conversation between the defendant and the UC blocked the car, the defendant "pulled the trigger of the handgun he was still pointing at the UC but the gun did not fire." Govt. Habeas Br. at 3.

---

to procure a perceived sentencing benefit." United States v. Quinones, 511 F.3d 289, 321 (2d Cir. 2007) (finding "true waiver" where defendants requested sentence they ultimately received). Specifically, he was permitted to plead guilty to only two counts of a four-count indictment and thereby avoided a potentially longer term of imprisonment for attempting to kill a law enforcement officer. He should not now be allowed to undo the agreement he benefited from. See United States v. Morgan, 386 F.3d 376, 381 (2d Cir. 2004) (noting that "the government—after having made valuable concessions to secure [the defendant]'s agreement to the plea"—should not be "deprived of its bargain").

    [2] The PSR is attached to this memorandum as a sealed exhibit.

3

The defendant fled on foot. PSR at ¶ 7. While law enforcement officers were chasing him, he "turned around, pointed a handgun at four pursuing officers and attempted to fire the gun directly at the officers." Id. The gun again failed to fire. Id.

The defendant was charged in a four-count indictment (the "Indictment") with attempting to kill a Special Deputy United States Marshal (i.e., the UC), in violation of 18 U.S.C. §§ 1113 and 1114 (Count One); assaulting the UC with a deadly and dangerous weapon while the UC was in the performance of official duties, in violation of 18 U.S.C. §§ 111(a)(1) and 111(b) (Count Two); Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count Three); and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Four). Count Three specifically alleged that the defendant "did knowingly and intentionally obstruct, delay and affect commerce and the movement of an article and commodity in commerce by robbery in that the defendant TONY CLANTON did take property by robbery from a Special Deputy United States Marshal." Ex. 2 at 2 (Indictment).

B.  Guilty Plea and Sentencing

On October 22, 1997, the defendant pleaded guilty, pursuant to a plea agreement, to Counts Three and Four, which charged him with Hobbs Act robbery and the use of a firearm during and in relation to the robbery. Early in his plea allocution, the presiding magistrate judge and the Assistant U.S. Attorney discussed the interstate nexus element of Count Three:

> THE COURT: The first charge, that's Count 3[,] is that on or about July 29th within this district, you knowingly[,] intentionally obstructed, delayed, and affected commerce in connection with the movement of an article in interstate commerce by committing a robbery. Is this a carjacking, Mr. Gunther?

| | |
|---|---|
| MR. GUNTHER: | No, Your Honor[,] it's a robbery of an undercover detective who was going to sell guns to the defendant.[3] |
| THE COURT: | Okay[,] and the guns[,] I take it[,] were not made in New York? |
| MR. GUNTHER: | That's correct. |
| THE COURT: | And the robbery is alleged to have taken place in the Eastern District of New York? |
| MR. GUNTHER: | Yes, Your Honor. |
| THE COURT: | Okay, so it's charged that by a commission of an act of robbery or an attempted robbery you were affecting the movement of goods in interstate commerce. The real charge is that you attempted a robbery. It is an attempt or consummated? |
| MR. GUNTHER: | Actually both. |
| THE COURT: | Do you understand what you're charged with in this count? |
| MR. CLANTON: | Yes. |

ECF No. 126-1 at 6-7 (Transcript of Oct. 22, 1997 Plea Colloquy ("Plea Tr.")). Later in the proceeding, the defendant provided his own description of the offense, clarifying that the UC was the purchaser of the guns, not the seller:

| | |
|---|---|
| THE COURT: | Okay, now tell me[,] on July 29th of 1997, were you involved in a robbery? |
| MR. CLANTON: | Yes. |
| THE COURT: | Tell me about it. |
| MR. CLANTON: | An undercover agent, I thought it was a regular guy – |
| THE COURT: | The gun seller? |

---

[3] This description of the transaction mistakenly inverted the buyer-seller relationship: in fact, as the defendant clarified later in the proceeding and as described in the PSR, the UC had agreed to buy guns from the defendant.

5

| | | |
|---|---|---|
| MR. CLANTON: | | No, he had cash to buy guns from me. |
| THE COURT: | | Oh, I see. |
| MR. CLANTON: | | And he was coming to purchase guns from me so I didn't know he was an officer and I robbed him for his money. |

Id. at 18. The prosecutor later proffered the additional fact that "the defendant was depleting the assets of someone he believed to be purchasing firearms and then travelling interstate." Id. at 19. When asked whether the defense was "questioning their [the government's] contention," defense counsel answered, "No, Your Honor." Id. Neither the defendant nor his counsel disputed the government's statement that the guns had been manufactured outside of the State of New York.

The defendant's guilty plea was accepted, and he was sentenced on February 6, 1998 to 97 months' imprisonment. ECF No. 126-2 at 2, 8 (Transcript of Feb. 6, 1998 Sentencing). At the sentencing hearing, the Court commented that "this person poses a danger if he's left out on the street" and noted with apparent concern that

> you're 24 and a half. You're already in the criminal history category of three . . . You have a conviction on December 12th, 1996. You got three years probation. And on June 17th, 1996 another conviction for which you got three years' probation. Then you committed this offense while you were on probation . . . you've had your chances. You've been on probation. And the only thing that's going to happen if by some miracle, and had I had the power to, let you out on the street, is you would get into trouble again.

Id. at 6, 7.

    C.    <u>The Defendant's Habeas Petition</u>

In May 1999, the defendant filed a habeas corpus petition in which he argued, among other things, the very same interstate commerce claim he presents now, albeit minus the Taylor component: namely, he claimed in his habeas petition that "the UC's status as an undercover purchaser of handguns is insufficient to meet the jurisdictional requirements of the Hobbs Act" and "somehow alters the commerce analysis." Clanton, 284 F.3d at 424 ("Clanton

6

Habeas") (quoting Govt. Habeas Br.). The Honorable Edward R. Korman, United States District Judge, denied the petition, and Clanton appealed. The Second Circuit affirmed the habeas denial. Contrary to the Petition's claim that the opinion did not focus on the merits, Petition at 7, the Second Circuit noted in the close of its opinion that "[w]e have considered all of Clanton's arguments on this appeal and have found in them no basis for reversal." Clanton Habeas, 284 F.3d at 424.

D. The Defendant's Release and Subsequent Criminal Conduct

The defendant was released from federal prison and placed on supervised release on January 5, 2005. See ECF No. 105 at 2 (March 14, 2008 Proposed Findings of Fact and Recommendations). On May 16, 2006, he violated the terms of his supervised release by committing an armed home invasion during which he shot a man in the leg. Id. at 2-3, 25. Less than eight months later, on January 8, 2007, he committed another home invasion in which he approached a person at home and showed the victim a fake Drug Enforcement Administration shield and a fake search warrant. The defendant then kicked down an apartment door and stole a safe, approximately $4,000 in cash, and personal papers. When law enforcement agents searched the defendant's residence, they found, among other things, a similar fake search warrant, a bulletproof vest, handcuffs, a counterfeit law enforcement identification card, drugs, guns, and other contraband. See United States v. 755 Narrows Road North, No. 07-CV-2839 (ERK) (E.D.N.Y.), ECF No. 1-3. He was convicted in state court of criminal possession of a weapon and criminal possession of a controlled substance and was sentenced in 2008 to 11 years in state prison. See ECF No. 116 at 4 (Transcript of Feb. 17, 2009 Sentencing). The defendant's federal supervised release was also revoked, and he was sentenced on February 17, 2009 to 18 months' imprisonment to run consecutively to his state sentence. Id. at 30. While in prison, he was convicted of assault in the second degree in 2009 and was sentenced to six years' imprisonment to

7

run concurrently to his state sentence. The defendant was released from state prison in 2016 and was discharged from state parole supervision in 2021.

The defendant and two co-conspirators are indicted for committing and conspiring and attempting to commit five armed robberies between January 20, 2023 and July 12, 2023. During their spree of violence, the defendant and his co-conspirators fired a shot in the presence of a victim and the victim's child, zip-tied a store clerk pressed a gun to the back of his head, and impersonated federal agents by wearing clothing with the letters "FBI" in an effort to rob a jewelry store owner. A superseding indictment filed in this District charges them with conspiracy to commit Hobbs Act robbery, attempted and substantive Hobbs Act robbery, and two counts of use of firearms in crimes of violence in violation of § 924(c). See generally United States v. Clanton et al., No. 23-CR-328 (S-1) (KAM) (E.D.N.Y.) ("Clanton 2023").

On March 25, 2024, two weeks before his trial was scheduled to begin, the defendant, who was on home confinement, removed his location monitor and fled out of state. He remained a fugitive for approximately five weeks and made significant efforts to avoid apprehension, including by fleeing from police officers during traffic stops, using false identification, and switching license plates, locations, and cell phones. He was apprehended on April 30, 2024 in Dingman's Ferry, Pennsylvania. Law enforcement officers found guns in the home he had been staying in and the car he had been driving when he was apprehended. See Clanton 2023, ECF No. 139.

Despite making a nearly identical interstate commerce argument in his habeas petition to the one he makes now, the defendant did not file a coram nobis petition asking this Court to vacate his 1997 conviction after his initial release from custody, throughout the pendency of the violation of supervised release proceeding, or during the state prosecutions described above.

8

Instead, on June 10, 2024, more than 26 years after his sentencing and less than six weeks after his apprehension in Pennsylvania, the defendant filed this Petition.

II.     APPLICABLE LAW

A writ of error coram nobis is "a remedy of last resort," Fleming v. United States, 146 F.3d 88, 89 (2d Cir. 1998) (per curiam), and is

> strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid. . . . A district court may issue a writ of error coram nobis pursuant to the All Writs Act, . . . where extraordinary circumstances are present. . . . The proceedings leading to the petitioner's conviction are presumed to be correct and the burden rests on the accused to show otherwise.

Foont v. United States, 93 F.3d 76, 78-79 (2d Cir. 1996) (citations and internal quotations omitted). As the Supreme Court has explained, the writ exists to redress only "fundamental error," United States v. Denedo, 556 U.S. 904, 911 (2009), and is issued "only under circumstances compelling such action to achieve justice," United States v. Morgan, 346 U.S. 502, 511 (1954). The Supreme Court has further observed that "it is 'difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (citation omitted) (alteration in original).

Coram nobis is available to collaterally attack a conviction where a petition under 28 U.S.C. § 2255 is not applicable, typically because the petitioner is no longer serving a sentence. Porcelli v. United States, 404 F.3d 157, 158 (2d Cir. 2005). A writ of coram nobis is different than a § 2255 petition; however, because coram nobis jurisprudence is both extraordinary and rare, and "[b]ecause of the similarities between coram nobis proceedings and 2255 proceedings, the 2255 procedure often is applied by analogy in coram nobis cases." Fleming, 146 F.3d at 90 n.2 (2d Cir. 1998) (quoting Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996)).

9

Despite the analogy, coram nobis relief is harder to obtain than habeas corpus relief. Kaminski v. United States, 339 F.3d 84, 90 (2d Cir. 2003) (Calabresi, J., concurring) ("[C]oram nobis is an extraordinary remedy which operates under rules that are generally more stringent than those applicable to habeas."). To obtain this writ, a petitioner must establish that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Foont, 93 F.3d at 79 (citations and internal quotations omitted). The burden of proving each requirement rests on the petitioner. Morgan, 346 U.S. at 512. Moreover, the burden is heavy: the court must start the analysis presuming "that the proceedings were correct." United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000).

Timeliness is a "threshold procedural hurdle" that a petitioner must overcome to obtain relief. Dixon v. United States, No. 14-CV-960 (KMK), 2015 WL 851794, at *6 (S.D.N.Y. Feb. 27, 2015); see Lazreg v. United States, No. 09-CR-00399 (NGG), 2019 WL 3412109, at *2 (E.D.N.Y. July 26, 2019) ("timeliness . . . is a procedural hurdle to obtain relief"). Though coram nobis has no statute of limitations, relief "may be barred by the passage of time." Foont, 93 F.3d at 79; see also Evangelista v. United States, No. 11-CV-5085 (LDW), 2012 WL 3818109, at *3 (E.D.N.Y. Sept. 4, 2012) (denying coram nobis petition filed 15 years after conviction). "[T]he longer the delay, the more compelling must be the reasons." Tocci v. United States, 178 F. Supp. 2d 176, 181 (N.D.N.Y. 2001). To determine whether a petition is time-barred, the Court must consider "whether there are 'sound reasons' for delaying in bringing the petition, 'in light of the circumstances of the individual case.'" Evangelista, 2012 WL 3818109, at *3 (quoting Echendu v. United States, No. 02-CV-1255 (DGT), 2003 WL 21653370, at *6 (E.D.N.Y. July 14, 2003). It

10

is the petitioner's burden to present the "sound reasons" for the delay and "[i]n the absence of justifiable circumstances for delay, the petition is properly dismissed." Evangelista, 2012 WL 3818109, at *3.

A precipitating event of the kind the defendant identifies, including a change in the law—here, the Supreme Court's decision in Taylor—can trigger the start of the period within which he must file a coram nobis petition. See Echendu, 2003 WL 21653370, at *7 (E.D.N.Y. July 14, 2003) (clock began to run upon enactment of legislation that led to petitioner's "lingering [immigration] disabilities"); see also Lazreg, 2019 WL 3412109, at *2-3 (pointing to dates when petitioner learned of immigration authorities' denial of immigration benefits as beginning of the period when he should have filed); United States v. Ko, No. 93-CR-521 (CSH), 1999 WL 1216730, at *4 (S.D.N.Y. Dec. 20, 1999) (date of petitioner's deportation order was the relevant date for timeliness of coram nobis petition).

III.   ARGUMENT

    A.   The Defendant Has Not Provided "Sound Reasons" for Failing to Bring His Coram Nobis Claims Earlier

As an initial matter, the Petition should be denied because the defendant offers no justification for the 26-year delay between his sentencing and filing the petition. Courts have rejected coram nobis petitions that were filed after much shorter delays than this one. See, e.g., Lazreg, 2019 WL 3412109, at *3 (finding unjustifiable a two-and-a-half year delay in seeking coram nobis relief after learning that an immigration petition could not be granted due to criminal conviction); Ejekwu v. United States, No. 02-CV-699 (SJ), 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005) (denying writ where petitioner filed more than two years after a naturalization application was denied and five years after he completed his supervised release); Echendu, 2003 WL 21653370, at *7 (denying writ where petitioner waited to file until more than five years after

11

enactment of legislation that led to his "lingering [immigration] disabilities"). Here, the defendant fails to provide a "sound reason" for failing to challenge this conviction earlier.

The Petition argues only that because Taylor was decided on June 21, 2022, and he was "first charged with new § 924(c) offenses" on August 15, 2023, it was filed timely. Assuming arguendo that the decision in Taylor is the operative date, the Petition would still be untimely. The nature of the claim the defendant now urges was immediately apparent the moment Taylor was decided: he had a § 924(c) conviction based on a Hobbs Act robbery he now (incorrectly) argues was an attempt, and Taylor held that attempted Hobbs Act robbery could not be the basis for § 924(c) liability. That claim—although meritless, as described below—would have made the instant Petition ripe as soon as the Taylor decision was issued. This is especially true given that the defendant had previously made exactly the same argument in his habeas petition. See Clanton Habeas, 284 F.3d at 423-24. Instead, the defendant waited to file his Petition for approximately two years after the June 21, 2022 Taylor decision. The defendant offers no reason to excuse this delay, much less the required "sound reasons." Foont, 93 F.3d at 79. Indeed, the only reason he has filed the Petition now at all is that he was swiftly indicted for committing additional gunpoint robberies in 2023.

The defendant alludes to this reason for filing the Petition, explaining that he was indicted in the Clanton 2023 case on August 15, 2023 and that his prior § 924(c) conviction subjects him to a greater sentence on the two § 924(c) counts in the Clanton 2023 case. Petition at 17. But the reality is that his 1997 conviction—including the § 924(c) count—has already undoubtedly formed the basis for increased sentences on his subsequent convictions. For example, state judges likely took into account the 1997 conviction in determining his sentences in those later cases, and yet he took no action via a writ of coram nobis to remedy what he clearly considered to

12

be an injustice, given that he made the same interstate commerce argument in his habeas appeal. While he was not faced with a § 924(c) sentencing enhancement before being indicted in Clanton 2023, the defendant failed to act despite being presumably subjected to non-mandatory greater sentences in his subsequent prosecutions for a home invasion and a prison assault.

Additionally, in seeking to justify the delay, he entirely ignores the intervening period between June 21, 2022 (when Taylor was decided) and August 15, 2023 (when he was indicted in Clanton 2023), a period of approximately 14 months during which he took no action whatsoever to challenge his 1997 conviction. This unexplained period of inaction makes the Petition "barred by the passage of time." Foont, 93 F.3d at 79. In the habeas context, which is often applied by analogy to coram nobis, Fleming, 146 F.3d at 90 n.2, the defendant would have had to file his Petition—at the latest—within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Due diligence would have allowed him to make this claim immediately after Taylor was decided. His failure to file within the one-year period after Taylor—even making the maximum allowances for the timing of Taylor and his indictment in Clanton 2023—is sufficient to deny the writ on timeliness grounds alone.

B.  Justice Requires that the Defendant's Petition for Coram Nobis Be Denied

If the Court reaches the merits, it should still deny the Petition. A writ of coram nobis may be issued only to redress "fundamental error," Denedo, 556 U.S. at 911, and "only under circumstances compelling such action to achieve justice," Morgan, 346 U.S. at 511. Neither circumstance exists here: the defendant's prior § 924(c) conviction was not the result of fundamental error, and justice does not require its vacatur.

The defendant's primary argument is that because the UC was only posing as an interstate gun trafficker, and was not actually one, the defendant was guilty of only an attempted

13

Hobbs Act robbery, not a completed one. Therefore, because the Supreme Court held in Taylor that an attempted Hobbs Act robbery is not a crime of violence, he argues that his § 924(c) conviction for using a firearm in a crime of violence must be vacated. See Taylor, 596 U.S. at 852. Contrary to the defendant's assertion, the defendant committed—and pleaded guilty to—a completed Hobbs Act robbery, and his § 924(c) conviction must stand.

When determining what crime a defendant pleaded guilty to under the modified categorical approach, the Court may look to the "statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005). The defendant acknowledges this but sidesteps the words of the charging document, apparently preferring that the Court focus only on the plea colloquy transcript, which he wrongly contends established only an attempted Hobbs Act robbery. An examination of the Indictment, however, reveals that the defendant was charged with and pleaded guilty to a completed Hobbs Act robbery.

    1.    The Indictment Charged a Completed Hobbs Act Robbery

As set forth above, Count Three of the Indictment, the Hobbs Act robbery count to which the defendant pleaded guilty, charged that he "did knowingly and intentionally obstruct, delay and affect commerce and the movement of an article and commodity in commerce by robbery." Ex. 2 at 2. The Indictment used clear language to denote that the Hobbs Act robbery had in fact occurred ("the defendant TONY CLANTON did . . . obstruct, delay and affect commerce [and] did take property by robbery"). Had the crime been an attempted Hobbs Act robbery, the Indictment would have used language such as "did knowingly and intentionally attempt to obstruct, delay and affect commerce" or a heading stating that the charge was an "Attempted Hobbs Act Robbery." See, e.g., Clanton 2023, ECF No. 89 at 2-3 (Superseding Indictment) (emphasis added). But the Indictment did not use such "attempt to" language, use a

14

heading with the word "attempted," or otherwise indicate that the robbery was attempted rather than completed. Instead, it stated definitively that commerce had been affected and the robbery accomplished. A reading of the plain words of the charge to which the defendant pleaded guilty, then, demonstrates that he pleaded guilty to a completed Hobbs Act robbery. Tellingly, the defendant has neither included the Indictment as an exhibit to the Petition nor addressed the significance, fatal to his claim, of its language charging a completed robbery.

2. <u>The Defendant Admitted to a Completed Hobbs Act Robbery in His Guilty Plea Allocution</u>

The Petition focuses on the plea transcript, arguing that the plea colloquy somehow introduced "confusion" about the charge to which the defendant was pleading guilty. This, too, is incorrect.

As shown above, the government made clear during the guilty plea hearing that the charged robbery had taken place in the Eastern District of New York and that the guns involved in the offense—three Glocks—were not manufactured in the State of New York. Plea Tr. 6-7. The UC was therefore <u>actually</u> engaged in buying items (the Glocks) that had moved in interstate commerce, and the fact that the defendant decided to rob the UC instead of completing the transaction affected interstate commerce by preventing the purchase. The suggestion that the plea colloquy "in no way indicated the victim [the UC] was engaged in commerce," Petition at 13, is illogical.

"[I]t is the law in our circuit that '[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act.'" <u>United States v. Silverio</u>, 335 F.3d 183, 186 (2d Cir. 2003) (internal citations omitted). The interstate commerce element of a Hobbs Act robbery charge is met in a case where a defendant robs an undercover law enforcement officer

15

engaged in commerce. Indeed, United States v. Jones, 30 F.3d 276 (2d Cir. 1994), involved highly similar facts. In that case, as in this one, the defendant robbed an undercover law enforcement officer of money that the undercover officer was going to use for an arranged purchase of contraband that had moved in interstate commerce—in Jones, cocaine. Id. at 279-80. The Second Circuit upheld the defendant's Hobbs Act robbery conviction, writing:

> The robbery of $9,000 from [undercover] agent Ortiz affected interstate commerce because the loss of those funds limited the amount of cocaine he would have been able to purchase in the future. The result is the same whether officer Ortiz [sic] was a government agent or a private individual known to be engaged in narcotics trafficking; in either case, such person's assets were depleted, thus affecting his ability to purchase a commodity that travels in interstate commerce.

Id. at 285.

This principle also extends to victims other than undercover law enforcement officers. Eight years after Jones, the Second Circuit reaffirmed its reasoning in United States v. Elias, 285 F.3d 183, 189 (2d Cir. 2002). In that case, the Second Circuit upheld a conviction for substantive Hobbs Act robbery and Hobbs Act robbery conspiracy where the grocery that was robbed sold products purchased from in-state suppliers that had "originated out-of-state," much like the guns involved in this case. Elias, 285 F.3d at 189; see also United States v. Pandrella, No. 22-2712-CR, 2024 WL 1506969, at *2 (2d Cir. Apr. 8, 2024) (summary order) (interstate commerce element met by proof of depletion of assets of loansharking business whose customers used loan funds for out-of-state purchases); United States v. McIntosh, No. 14-1908, 2023 WL 382945, at *3 (2d Cir. Jan. 25, 2023) (summary order) (interstate commerce element met by proof that loan shark who was robbed had loaned money to individuals who "used it for out-of-state contracts"); Rodgers v. United States, No. 11-CR-117 (KMW), 2020 WL 3099967, at *2 (S.D.N.Y. June 11, 2020), aff'd, 851 F. App'x 261 (2d Cir. 2021) (upholding conviction for

16

transporting and receiving a firearm in interstate commerce where defendant gave a cooperating witness a gun in one state "for use in" another state and stated at plea colloquy, "I was under the assumption that he [the cooperating witness] was going to use it for" cocaine distribution).

The description of the offense during the defendant's plea colloquy satisfied the interstate commerce element by making clear that the guns involved had traveled in interstate commerce and that the assets of the UC, the purchaser of those guns, were depleted, diminishing the ability of the UC to buy such items in the future. The prosecutor's comment that the robbery was "both" a consummated and attempted robbery does not change this analysis. The comment did not negate that a completed Hobbs Act robbery had occurred; indeed, it supported it. And the essential facts described herein, including the out-of-state manufacture of the firearms that were the subject of the transaction, were agreed to by both parties at the plea colloquy without objection from the defendant or his counsel. This agreement waived the interstate commerce challenge the defendant now attempts to bring. See United States v. Celaj, 649 F.3d 162, 170 n.5 (2d Cir. 2011) ("[Defendant] waived any challenge to the sufficiency of the evidence that a robbery of a marijuana dealer would affect interstate commerce by entering into a factual stipulation that marijuana traveled in interstate and foreign commerce to arrive in New York.")

### 3. Completed Hobbs Act Robbery is a Crime of Violence

Since Taylor, the Second Circuit has reaffirmed in two cases that completed Hobbs Act robbery, as opposed to attempt or conspiracy to commit Hobbs Act robbery, is a crime of violence. In United States v. McCoy, 58 F. 4th 72, 74 (2d Cir. 2023), the court addressed Taylor directly and concluded that "we see nothing in Taylor's language or reasoning that undermines this Court's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." And just this year, the Second Circuit specifically rejected two hypothetical completed Hobbs Act robberies without force that the defendant poses:

17

"taking or threatening property while threatening nonphysical injury to intangible property" and threatening self-harm. United States v. Barrett, 102 F. 4th 60, 81 (2d Cir. 2024). "Circuit precedent compels the conclusion that Hobbs Act robbery is a categorical crime of violence," id. at 97 (internal citation omitted), and the Court is bound by that precedent to reject the defendant's arguments to the contrary. Because the defendant was charged with and pleaded guilty to a completed Hobbs Act robbery, his § 924(c) conviction is valid under binding precedent.

## CONCLUSION

For the reasons set forth above, the Petition should be denied.

Dated: Brooklyn, New York
July 22, 2024

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: /s/ Andrew M. Roddin
Andrew M. Roddin
Assistant United States Attorney
(718) 254-6455